WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


LAURIE LYNN ALCAIDA,                )
                                    )
                    Plaintiff,      )
                                    )
        vs.                         )
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )        No. 2:13-cv-2002-HRH
                    Defendant.      )
_____)


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff has timely filed her opening brief,[1]

to which defendant has responded.[2]  Oral argument was not requested and is not deemed

necessary.

<u>Procedural Background</u>

Plaintiff is Laurie Lynn Alcaida.  Defendant is the Commissioner of Social Security.

_____

[1]Docket No. 15.

[2]Docket No. 17.

On February 9, 2010, plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that she became disabled on April 16, 2009.  Plaintiff alleged that she was disabled because of left ankle surgery, a broken tibia, stress, depression, physical therapy, and migraines.  Plaintiff's application was denied initially and upon reconsideration.  After a hearing on April 11, 2012, an administrative law judge (ALJ) denied plaintiff's claim.  On August 2, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's June 21, 2012 decision the final decision of the Commissioner.  On October 3, 2013 plaintiff commenced this action in which she asks the court to find that she is entitled to benefits.

<u>General Background</u>

Plaintiff was born on September 4, 1963.  She was 48 years old at the time of the hearing.  Plaintiff has a high school education.  Plaintiff is married and lives with her husband and son.  Plaintiff's past relevant work is as a casino cocktail waitress.

<u>The ALJ's Decision</u>

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2013."[3]  The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

[3]Admin. Rec. at 92.

[4]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since April 16, 2009, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: status post ankle/foot surgery x two; depression; headaches; and status post right shoulder surgery x two...."[6]

At step three, the ALJ found that plaintiff "does not have an impairment or

─────────────────

[4](...continued)

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 92.

[6]Admin. Rec. at 92.

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7]

"Between steps three and four, the ALJ must, as an intermediate step, assess the

claimant's RFC." <u>Bray v. Comm'r Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222-23 (9th Cir. 2009).

The ALJ found that plaintiff

> has the residual functional capacity to perform less than the
> full range of sedentary work as defined in 20 CFR 404.1567(a).
> Function by Function: lift and/or carry 10 pounds occasionally;
> stand and/or walk for approximately two hours in an eight-
> hour workday; sit for approximately six hours in an eight-hour
> workday; frequent crouching and balancing; occasional
> climbing ramps and stairs, stooping, kneeling and crawling but
> never crawling or climbing ladders, ramps and scaffolds;
> frequent reaching with the right dominant hand and needs to
> avoid all exposure to hazardous machinery and unprotected
> heights.  Mentally, the claimant is limited to unskilled work
> performing routine and simple repetitive tasks with occasional
> interaction with the public and co-workers.[8]

The ALJ found plaintiff's pain and symptom statements less than credible because

1) they were "not fully corroborated by objective medical evidence", 2) she had not gotten

any treatment for her migraine headaches, 3) her "left ankle complaints are out of

proportion to objective findings" and "[t]he right ankle improved following surgery", 4)

---

[7]Admin. Rec. at 93.

[8]Admin. Rec. at 94-95.

"Dr. Doss[9] reported that the claimant ambulated without assistance or assistive devices, and actually moved with a perky and free gait" and observed plaintiff walking "briskly" to her car," 5) plaintiff had "not undergone any intensive therapy", 6) the "course of treatment" plaintiff received "has generally reflected a conservative approach", 7) "[t]he record reflects significant gaps in treatment", 8) "no treating or examining physician has opined that the claimant is totally and permanently disabled from all work" 9) plaintiff "does not exhibit any significant ... muscle atrophy, loss of strength, or difficulty moving", 10) plaintiff "is not currently receiving any mental health treatment", and 11) plaintiff

––––––––––––––––––

[9]On April 6, 2010, Minette Nance Doss, Ed.D., completed a psychiatric evaluation of plaintiff. In her behavioral observations, Dr. Doss noted that plaintiff

> arrived 30 minutes early for the appointment. She was driven to the appointment by her parents, and they entered the office with her. The parents waited in reception, while Laurie participated solo in the evaluation. The claimant ambulated without assistance or assistive devices, and actually moved with a perky and free gait.

> This individual was well proportioned for her height. Basically Laurie looked her chronological age. She was dressed slightly better than casually. This lady wore make up and was well groomed. She was also able to make eye contact. This woman was fully cooperative throughout the assessment. However, Ms. Alcaida cried quietly off and on during the appointment.... All speech was logical and coherent. This lady was easy to interview. She walked briskly to the car upon exiting the office.

Admin. Rec. at 500.

"was able to participate in the administrative hearing and respond to the questioning without any apparent difficulties."[10]

The ALJ gave no weight to the testimony of plaintiff's mother, Linda Kelsey,[11] because "she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the intensity of unusual moods or mannerisms" and because she "cannot be considered a disinterested third party witness whose report would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations she alleges."[12] The ALJ also gave Kelsey's testimony little weight because it was not consistent with the preponderance of the medical evidence.[13]

The ALJ gave significant weight[14] to Dr. Radkowsky's[15] opinion and to Dr. Griffith's

_____

[10]Admin. Rec. at 95-96.

[11]Kelsey completed third-party function reports on February 26, 2010 and on August 25, 2010.  Admin. Rec. at 191-198 & 256-263.

[12]Admin. Rec. at 97.

[13]Admin. Rec. at 97.

[14]Admin. Rec. at 97.

[15]On April 8, 2010, Allen Radkowsky, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 4 hours; sit for 6 hours; occasionally push and pull with left lower extremities; occasionally climb ramps/stairs and kneel; never climb ladders/ropes/scaffolds or crawl; frequently balance, stoop, and crouch; and should avoid concentrated exposure to hazards such as machinery and heights. (continued...)

opinion.[16]  The ALJ also gave significant weight[17] to the opinions of Dr. Doss,[18] Dr. Zuess,[19]

---

[15](...continued)
Admin. Rec. at 63-65.

[16]On October 19, 2010, Ernest Griffith, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 2 hours; sit for 6 hours; could occasionally push and pull with left lower extremities; could occasionally climb ramps/stairs and kneel; could never climb ladders/ropes/scaffolds or crawl; could frequently balance, stoop, and crouch; and should avoid concentrated exposure to hazards such as machinery and heights.  Admin. Rec. at 80-81.

[17]Admin. Rec. at 97.

[18]Dr. Doss opined that plaintiff had the "ability to learn simple and moderately complex tasks;" that plaintiff's sustained concentration and persistence was "[i]mpaired due to the anxiety overlay" but that plaintiff "can maintain a normal routine in her household"; that in terms of social interaction, plaintiff had "some emotional lability[,] [i]nfrequent grooming and hygiene[, w]ould respond well to supervision[,] and was weepy and tense;" was "[f]airly well functioning in her home environment[, w]ould be aware of normal hazards and could take appropriate action, [but] anxiety may impair her ability to respond to changes in the environment and work setting."  Admin. Rec. at 503.

[19]On May 15, 2010, Dr. Jonathan Zuess, M.D., opined that plaintiff was

> able to carry out simple and detailed instructions, follow
> simple work-like procedures, and make simple work-related
> decisions.  [Plaintiff] appears to have a moderately impaired
> ability to sustain attention throughout extended periods of
> time.  [Plaintiff] appears to have a moderately impaired ability
> to perform at a consistent pace and maintain a regular 40 hour
> work schedule without interference from cognitively-based
> symptoms....  [Plaintiff] has a fair ability to interact appropri-
> ately with the general public and co-workers due to appearing
> depressed and anxious.  [Plaintiff] appears to have a good
> ability to respond to supervisors....  [Plaintiff] has a fair ability
> to respond appropriately to basic work setting changes due to
> anxiety.  [Plaintiff] likely has a good ability to take appropriate

(continued...)

and Dr. Yandell.[20]

At step four, the ALJ found that plaintiff could not perform any of her past relevant

_____

[19](...continued)

> precautions in hazardous situations and utilize transportation.
> [Plaintiff] likely is able to independently set goals.... [T]he
> available evidence indicates that [plaintiff] has the basic mental
> functional capacities necessary to perform at least simple work
> on a sustained basis.

Admin. Rec. at 65-66.

[20]On October 14, 2010, David Yandell, Ph.D., opined that plaintiff was

> able to carry out simple and detailed instructions, follow
> simple work-like procedures, and make simple work-related
> decisions. [Plaintiff] appears to have a moderately impaired
> ability to sustain attention throughout extended periods of
> time. [Plaintiff] appears to have a moderately impaired ability
> to perform at a consistent pace and maintain a regular 40 hour
> work schedule without interference from cognitively-based
> symptoms.... [Plaintiff] has a fair ability to interact appropri-
> ately with the general public and co-workers due to appearing
> depressed and anxious. [Plaintiff] appears to have a good
> ability to respond to supervisors.... [Plaintiff] has a fair ability
> to respond appropriately to basic work setting changes due to
> anxiety. [Plaintiff] likely has a good ability to take appropriate
> precautions in hazardous situations and utilize transportation.
> [Plaintiff] likely is able to independently set goals.... [T]he
> available evidence indicates that [plaintiff] has the basic mental
> functional capacities necessary to perform at least simple work
> on a sustained basis.

Admin. Rec. at 82-83.

work.[21]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as a call-out operator, addressing clerk, or document preparer.[22]  This finding was based on the testimony of Shirley Ripp, the vocational expert who testified at the hearing.[23]

The ALJ thus concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from April 16, 2009, through the date of this decision...."[24]

### Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id.

---

[21]Admin. Rec. at 97.

[22]Admin. Rec. at 98-99.

[23]Admin. Rec. at 52-53.

[24]Admin. Rec. at 99.

(quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" <u>Id.</u> If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. <u>Id.</u> But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

Plaintiff first argues that the ALJ erred because the ALJ's RFC was incomplete. Plaintiff argues that the ALJ failed to include any limitations flowing from plaintiff's migraines headaches. In assessing a claimant's RFC, the ALJ must take "into account those limitations for which there was record support...." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). This includes taking into account all nonexertional limitations supported by the record. SSR 85-16. Plaintiff testified that when she has a migraine she has to lay down in the dark for up to three days and that she has migraines one to two times per month.[25] Plaintiff argues that the ALJ should have included this limitation in her RFC and that the ALJ failed to explain why she did not include this limitation. Plaintiff further

---

[25]Admin. Rec. at 43.

argues that the ALJ's failure to include this limitation in her RFC was not harmless because the vocational expert testified that there would be no work for someone who had more than one unexcused absence per month.[26]  An error is harmless if it is "inconsequential to the ultimate nondisability determination."  Stout, 454 F.3d at 1055.

The ALJ did not err in failing to include a limitation related to plaintiff's migraines in plaintiff's RFC.  Although there is much evidence in the record that plaintiff had frequent, if not daily, headaches,[27] she testified that she gets migraines 1-2 times a month and that they might last from 6 hours to 3 days.[28]  Based on this evidence, the ALJ could have reasonably concluded that not all of plaintiff's migraines would happen during the work week and that not all of them would last for several days.

Plaintiff next argues that the ALJ erred in finding her pain and symptom statements less than credible.  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).   "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id.

---

[26]Admin. Rec. at 53.

[27]Admin. Rec. at 319, 326, 350, 357, 989, 1108, 1154, & 1177.

[28]Admin. Rec. at 43-44.

(quoting <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'"  <u>Id.</u> (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  <u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1281).  "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  <u>Id.</u> at 1014-15 (quoting <u>Smolen</u>, 80 F.3d at 1281).  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  <u>Id.</u> at 1015 (quoting <u>Moore v. Comm'r of Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)).  "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'"  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting <u>Turner v. Comm'r of Social Sec.</u>, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]"  <u>Id.</u>  (internal citations omitted).

The ALJ gave eleven reasons for finding plaintiff's pain and symptom statements less than credible.  Plaintiff argues that none of these reasons were clear and convincing.

First, the ALJ found that plaintiff's subjective complaints were not fully corroborated by the objective evidence.[29]  An ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged" complaints.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  Thus, in order for this to have been a proper reason for the ALJ to reject plaintiff's statements, at least some of the other reasons given by the ALJ had to be clear and convincing, which as will be discussed below, they were not.

The second reason given by the ALJ was that plaintiff never received any treatment for her migraines.[30]  This was not a clear and convincing reason because plaintiff has received consistent treatment, generally in the form of prescription medication, for her migraines since 2008.[31]

The third reason given by the ALJ was that plaintiff's "left ankle complaints are out

---

[29]Admin. Rec. at 95.

[30]Admin. Rec. at 95.

[31]Admin. Rec. at 319, 322, 326, 339-340, 641, 643, 664, 815-820, 881, 993, 1000, 1010, 1047, 1050-1052, 1107-1109, & 1154-1155.

of proportion to objective findings" and "[t]he right ankle improved following surgery."[32] Plaintiff concedes that her right ankle improved after surgery, but she argues that the ALJ's finding that her left ankle complaints were out of proportion to objective findings is nothing more than lay speculation. However, this finding was not based on speculation but rather was based on Dr. Novack's[33] comments that plaintiff's complaints of left ankle pain were out of proportion to what he was seeing objectively.[34] But, as plaintiff points out, Dr. Heiner[35] did surgery on her left ankle after Dr. Novack had made the foregoing comments, surgery that revealed chronic left ankle instability and talar arthritis, which did not appear on MRIs.[36] Thus, this was not a clear and convincing reason to find plaintiff's statements less than credible.

The fourth reason given by the ALJ for finding plaintiff's pain and symptom statements less than credible was that Dr. Doss observed that plaintiff's gait was "perky

---

[32]Admin. Rec. at 95.

[33]Dr. Novack began treating plaintiff on September 21, 2010. Admin. Rec. at 849. He did surgery on plaintiff's right ankle on October 26, 2010. Admin. Rec. at 769. He stopped treating plaintiff on February 21, 2011 because plaintiff had to change insurance after her husband lost his job. Admin. Rec. at 832-833.

[34]Admin. Rec. 833 & 836-837.

[35]Dr. Heiner, an orthopedic surgeon, began treating plaintiff in April 2011. Admin. Rec. at 1025.

[36]Admin. Rec. at 1065.

and free" and that she walked "briskly."[37]  This was not a not clear and convincing reason

because Dr. Doss saw plaintiff only once and because Dr. Doss, who was a psychologist,

was not qualified to opine on the subject of plaintiff's gait.  In addition, Dr. Doss'

observation contradicts those of plaintiff's treating physicians who saw plaintiff on

monthly basis and often found that plaintiff's gait was antalgic or that she was limping.[38]

The fifth and sixth reasons given by the ALJ for discrediting plaintiff's subjective

complaints were that plaintiff had not undergone any intensive therapy and that her course

of treatment was generally conservative.  But, the medical evidence of record does not

support these findings.  Rather, the medical evidence of record shows that plaintiff

underwent five surgeries during the relevant time period,[39] that she completed numerous

rounds of physical therapy,[40] received steroid injections,[41] and was treated with opiate pain

medication.[42] Thus, this was not a clear and convincing reason to find plaintiff's statements

less than credible.

---

[37]Admin. Rec. at 96.

[38]Admin. Rec. at 353, 380, 383, 386, 392, 395, 401, 404, 495, 513, 516, 519, 522, 525, 531,
880, 1026 & 1051.

[39]Admin. Rec. at 284, 769, 1065, & 1069.

[40]Admin. Rec. at 206, 388-390, 442, 448, 475-486, 1056 & 1058.

[41]Admin. Rec. at 281, 523 & 1139.

[42]Admin. Rec. at 357, 840, 1026 & 1155.

The seventh reason given by the ALJ was that the record reflects significant gaps in treatment. This was not a clear and convincing reason for finding plaintiff's pain and symptom statements less than credible. The ALJ does not indicate when she believed there was a gap in treatment and the record does not indicate any gaps in treatment. Rather, the record reflects that plaintiff saw Drs. O'Brien,[43] Parker,[44] Novack,[45] and Heiner[46] at least once a month if not more after she initiated treatment with each of them. Plaintiff also saw Dr. Astran[47] on a regular basis prior to Dr. Parker becoming her PCP.

The eighth reason given by the ALJ was that no treating or examining doctor opined that plaintiff could not work.[48] Plaintiff concedes that both Dr. O'Brien and Dr. Heiner opined that she could perform sedentary work.[49] And while it can be probative that no

---

[43]Dr. O'Brien was plaintiff's first orthopedic surgeon and he treated plaintiff from April 6, 2009 through July 12, 2010. Admin. Rec. at 297-299, 374-387, 391-393, 400-405, 408-428, 432-438, 443-460, 494-496 & 510-532.

[44]Dr. Parker was plaintiff's PCP from October 2010 on. Admin. Rec. at 815-820, 1010-1019, 1045-1053, 1136-1151, & 1107-1117.

[45]Admin. Rec. at 832-851 & 769-770.

[46]Admin. Rec. at 1023-1027, 1056-1066, 1069-1083, 1157-1167 & 1183-1186.

[47]Dr. Astran was plaintiff's PCP from December 1, 2008 through September 18, 2010. Admin. Rec. at 319-370, 638-714 & 878-1004.

[48]Admin. Rec. at 96.

[49]On April 29, 2010, Dr. O'Brien restricted plaintiff to "work[ing] at a sit down job only at this time, nothing that would require her to be on her feet at this time." Admin.

(continued...)

doctor "expressed the opinion that [claimant] was totally disabled," see <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993),  there was one treating physician who opined that plaintiff had limitations that could render her disabled.  On February 18, 2010, Dr. Astran, who was treating plaintiff's anxiety and depression, opined that plaintiff had a significant mental impairment that would cause significant interference with her daily functioning.[50]  Thus, this was not a clear and convincing reason for finding plaintiff's statements less than credible.

The ninth reason given by the ALJ was that plaintiff did not have any significant muscle atrophy, loss of strength, or difficulty moving.[51]  This was not a clear and convincing reason because as set forth above, plaintiff's treating physicians often noted that

_____

[49](...continued)
Rec. at 496.  On January 12, 2012, Dr. Heiner opined that plaintiff

> could easily perform a desk job in any office environment given the scope of her injuries at this point in time.  I fully and firmly believe that she will continue to improve with respect to being able to do at least light to moderate daily activities for a lifetime.  This shoulder injury is not going to be a debilitating thing for her full lifetime.  The ankle injuries may be more difficult to overcome in the long run however, there are many jobs I think she would be able to perform in the future.

Admin. Rec. at 1158.

[50]Admin. Rec. at 307.

[51]Admin. Rec. at 96.

-17-

she was limping or had an antalgic gait.

The tenth reason given by the ALJ for finding plaintiff's pain and symptom statements less than credible was that plaintiff "is currently not receiving any mental health treatment."[52] But, because plaintiff was receiving mental health treatment from Dr. Parker, her PCP,[53] this was not a clear and convincing reason to find plaintiff's statements less than credible.

The final reason given by the ALJ was that plaintiff "was able to participate in the administrative hearing and respond to the questioning without any apparent difficulties."[54] But, "[t]he fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible." Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984). Thus, this was not a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.

In sum, none of the reasons given by the ALJ for finding plaintiff's pain and symptom statements less than credible were clear and convincing. Therefore, the ALJ erred in assessing plaintiff's credibility.

---

[52]Admin. Rec. at 96.

[53]Admin. Rec. at 816, 1013, 1046, 1049 & 1107.

[54]Admin. Rec. at 97.

Lastly, plaintiff argues that the ALJ erred at step five because the ALJ's hypothetical was incomplete. "The ALJ may meet h[er] burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012). "'If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" Id. at 1162 (quoting Matthews, 10 F.3d at 681).

The ALJ gave the vocational expert a hypothetical person who "would be limited to sedentary work with occasional climbing of ramps or stairs. No ladders, ropes, or scaffolds. Frequent balancing. Occasional stooping and kneeling. Frequent crouching and no crawling. This individual would be limited to frequent reaching with the right, dominant hand. And needs to avoid concentrated exposure to hazards, such as machinery and unprotected heights. And this individual would be limited to simple and unskilled work."[55] The ALJ's RFC was identical to this hypothetical except that the RFC included the additional limitation that plaintiff was limited to "occasional interaction with the public and co-workers."[56]

---

[55]Admin. Rec. at 52.

[56]Admin. Rec. at 95.

-19-

Plaintiff argues that the failure to include the "occasional interaction with public and co-workers" limitation in the hypothetical was not harmless because each of the jobs identified by the vocational expert require some degree of social contact, according to their descriptions in the Dictionary of Occupational Titles.  A call-out operator

> [c]ompiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.[57]

An addressing clerk "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail."[58]  And, a document preparer

> [p]repares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICRO-

---

[57]DOT, http://www.occupationalinfo.org/23/237367014.html (last visited Oct. 22, 2014).

[58]DOT, http://www.occupationalinfo.org/20/209587010.html (last visited Oct. 22, 2014).

> FILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.[59]

Plaintiff argues that it is clear that all of these jobs are performed in an office setting and thus require contact with others.

While it would appear that the call-out operator job requires more than occasional interaction with the public, it is not clear from the descriptions for the addressing clerk and document preparer jobs whether these jobs would require more than occasional interaction with the public and co-workers. This is the type of question that should have been posed to the vocational expert. But, because the vocational expert was not asked whether or not the jobs identified did or did not require more than occasional interaction with the public and co-workers, the court cannot determine whether the ALJ's error at step five was harmless or not.

Because the court cannot determine, based on the current state of the record, whether the ALJ's step-five error was harmless or not, a remand for further proceedings is required. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (remand for further

---

[59]DOT, http://www.occupationalinfo.org/24/249587018.html (last visited Oct. 22, 2014).

proceedings required when "enhancement of the record would be useful").  Although the ALJ also erred as to plaintiff's credibility and plaintiff might be disabled if her testimony were credited as true, the court is required "to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  <u>Garrison</u>, 759 F.3d at 1021.  Here,  an evaluation of the record as a whole creates serious doubt that plaintiff is disabled.  Thus, a remand for further proceedings is appropriate in this case.

<u>Conclusion</u>

Based on the foregoing , the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 22nd day of October, 2014.

<u>/s/ H. Russel Holland    </u>
United States District Judge